IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Bobby E. Shockley,<br>      Plaintiff, | )<br>)<br>) |
| v. | )   1:20cv229 (RDA/JFA) |
| Ms. Brown,<br>      Defendant. | )<br>)<br>)<br>) |

MEMORANDUM OPINION

Bobby E. Shockley ("Plaintiff" or "Shockley"), a former Virginia inmate proceeding pro se, filed a civil-rights suit under 42 U.S.C. § 1983, alleging his constitutional rights were violated while he was detained at the Rappahannock Regional Jail ("RRJ").[1] On October 18, 20221, the defendant filed a motion to dismiss Shockley's amended complaint [Dkt. No. 22], and Shockley was notified of his right to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 23]. Plaintiff has not filed a response. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the defendant's Motion to Dismiss must be granted, and the amended complaint must be dismissed.

I. Amended Complaint

In his amended complaint, Shockley, a convicted prisoner while detained at RRJ, alleges that he found a screw in his "dinner tray," which would have caused "great danger" to his health if he had eaten it.[2] [Dkt. No. 7 at 5, 6]. He filed a grievance, but never received a response to his grievance, which he alleges is a violation of due process. Plaintiff alleges he is Muslim, he has to

---

[1] Plaintiff is presently detained in the Virginia Department of Corrections at the Coffeewood Correctional Center.

[2] In his original complaint, Shockley alleged the incident occurred on February 11, 2020 [Dkt. No. 1 at 4], but he did not include a date in his amended complaint.

eat at certain times and often his food was late or he did not eat because the kitchen was closed, which impacted his ability to practice his "religion openly and freely." [Id. at 5]. Shockley alleges he was a vegan, does not eat milk or processed meat, and that the meal trays he was served had "everything" that was "totally against what [he] eat[s]." [Id. at 5, 6].

Shockley alleges that Brown was the supervisor of the kitchen and that she failed to properly oversee the food before it was served, and that she was aware of his religion and diet.

## II. Standard of Review

A motion to dismiss tests whether a complaint states a cause of action upon which relief can be granted. Whether a complaint sufficiently states a claim is determined by "the familiar standard... under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Accordingly, a plaintiff's alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A plaintiff's allegations must "raise a right to relief above the speculative level," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. Id.

Where a complaint is filed by a prisoner acting pro se, however, that complaint must be construed liberally regardless of how unskillfully it is pleaded. Haines v. Kerner, 404 U.S. 519,

2

(1972). A pro se litigant is therefore not held to the strict pleading requirements demanded of attorneys. Estelle v. Gamble, 429 U.S. 97, 106-07 (1976); Figgins v. Hudspeth, 584 F.2d 1345 (4th Cir. 1978), cert. denied, 441 U.S. 913 (1979). For these reasons, a court's power to dismiss a prisoner's pro se complaint summarily is limited. Id. at 1347.

### III. Analysis

The amended complaint's claim has three parts. An alleged violation of Shockley's right to religious freedom; a foreign object was found in his food; and a due process violation because he did not receive a response to his grievance. Shockley's allegations do not state a claim upon which relief can be granted and his amended complaint will be dismissed.

*A. Diet*

Shockley's diet claim alleges that he was either served his food late; or that he did not eat because the kitchen was closed. Shockley also alleges that defendant Brown knew he was a vegan, meaning he does not eat milk or processed meat, and that the food trays he was served contained "everything against what" he eats. [Dkt. No. 7 at 5]. Shockley alleges that Brown supervises the delivery of the meals and that Brown was aware of his religious dietary restrictions because "it's posted for all kitchen personnel to see while preparing the food for inmates." [Id. at 6]. Shockley "told staff" about his complaints and the "message was allegedly relayed to" Brown. [Id.]. Shockley does not allege that Brown was personally involved in preparing and providing him his meal trays. He alleges liability based upon Brown's role as a supervisor who he alleges failed to ensure that the persons preparing and serving him his food failed to adhere to a posted document of some sort that instructs the personnel preparing and serving the food that Shockley is to be served a vegan diet.

3

Inmates retain their First Amendment right against prohibiting "the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). To prove that an official policy or action violated his free exercise rights, an inmate must first show a sincere belief or practice that is "rooted in religion," because the First Amendment "by its terms, gives special protection to the exercise of religion." Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 713 (1981). He must also show that the challenged official policy or action placed undue burden on the free exercise of his religious practice. Id. at 717. Proving the existence of such a burden requires evidence that the official policy or action "put[] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 718. An officer's negligent interference with an inmate's religious practice is not a constitutional deprivation. Lovelace v. Lee, 472 F.3d 174, 196 (4th Cir. 2006).

The Court will assume that Shockley's assertion that he is a Muslim satisfies the requirement that he has a sincerely held religious belief. Shockley, however, does not allege that the actions of the food personnel, much less Brown, were intended to modify or violate his religious beliefs. To the contrary, he has alleged that the food personnel were instructed to provide him with vegan meals, and that they did not follow the instructions "posted" in the kitchen. Consequently, he has not stated a claim.

In addition, his allegations that Brown was aware of his status as a vegan and that she was aware of his complaints is conjecture. He assumes that Brown has read a document posted in the kitchen and that his complaints were relayed to her. While a supervisor can be held liable for the constitutional injuries inflicted by their subordinates under some circumstances, "[l]iability in this context is not premised on respondeat superior, Monell v. Department of Social Services, 436 U.S. 658, 691 (1978), but on a recognition that supervisory indifference or tacit authorization of

subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). "'Actual knowledge or awareness on the part of the alleged inflictor' is essential." Adams v. Drew, 906 F. Supp. 1050, 1060 (E.D. Va. 1995) (quoting Brice v. Virginia Beach Correctional Ctr., 58 F.3d 101, 105 (4th Cir. 1995)). The allegations provide no basis upon which to infer actual knowledge on Brown's part. Shockley's claim with regard to the alleged violation of his right to the free exercise of his religion will be dismissed.

### B. Metal Screw

The Constitution is not implicated in every isolated instance of food containing a foreign object. The Fourth Circuit has held:

> A single incident of finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected; however, evidence of frequent or regular injurious incidents of foreign objects in food raises what otherwise might be merely isolated negligent behavior to the level of a constitutional violation.

Brown v. Brock, 632 F. App'x 744, 747 (4th Cir. 2015) (unpublished) (citing Green v. Atkinson, 623 F.3d 278, 280-81 (5th Cir. 2010) (analyzing Eighth Amendment with regard to state prisoner who broke tooth while biting down on foreign object in food)).[3] Thus, in order to state a plausible constitutional claim Shockley must show both (1) "a deprivation suffered or injury inflicted" that was "sufficiently serious," when measured by an objective standard (objective component), and (2) that the responsible prison officials had a "sufficiently culpable state of mind" (subjective component). Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (quoting Wilson v. Seiter, 501 U.S. 294, 298-300 (1991)). Shockley's allegation fails under both prongs.

---

[3] See Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that [prison] food occasionally contains foreign objects ... while unpleasant, does not amount to a constitutional deprivation."); LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (same); Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992) (ruling that presence of foreign objects in food was insufficient to prove deliberate indifference).

First, Shockley simply alleges he found a metal screw in his food and that it could have endangered his health *if* he had eaten it. [Dkt. No. 7 at 6]. Even if simply finding a screw was sufficient to satisfy the first prong, Shockley alleges in a conclusory fashion that Brown is "constitutionally liable" because she is the supervisor. The allegation is insufficient to state a claim. "Actual knowledge or awareness on the part of the alleged inflicter thus becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice, 58 F.3d at 105 (quoting Farmer v. Brennan, 511 U.S. 825, 844 (1994)). This portion of Shockley's claim will be dismissed.

### *C. Grievance Response*

Shockley's allegation that he never received a response to his grievance violates due process has no merit. The Constitution "creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Mitchell v. Murray, 856 F. Supp. 289, 294 (E.D. Va. 1994).[4] Because a state's grievance procedure confers no substantive rights upon prison inmates, a prison official's failure to comply with the grievance procedures is not actionable under § 1983. See Adams, 40 F.3d at 75; see also Flick v. Alba, 932 F.2d 728 (8th Cir. 1991) (although there certainly is a First Amendment right to petition government for redress of grievances, there is no right to a response or any particular

---

[4] See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005) (prisoner had no claim for "failure to investigate" a grievance because there was no "protected liberty interest" in having the grievance "resolved to his satisfaction"); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure."); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he Constitution creates no entitlement to grievance procedures or access to such procedures voluntarily established by the state.") (citing Adams, 40 F.3d at 75).

action). Therefore, plaintiff's allegations do not state a claim under § 1983, and this claim also must be dismissed.[5]

## IV. Conclusion

For the reasons outlined above, defendant Brown's motion to dismiss [Dkt. No. 23] will be granted through an Order that will issue alongside this Memorandum Opinion.

Entered this  11  day of  April  2022.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[5] Shockley's reference to a violation of the "Food, Health, and Hygiene Act," does not state a claim. As the defendant points out, "[t]he 'Food, Health, Hygiene Act' does not exist." [Dkt. No. 23 at 7]. Consequently, to the extent Shockley attempted to state a claim based upon a nonexistent law, his claim fails. See Walton v. Gray, 695 F. App'x 144, 146 (6th Cir. 2017) (district court erred because its adverse action analysis focused on the *nonexistent right* to prison employment); Ruiz v. New Garden Twp., 376 F.3d 203, 213 (3d Cir. 2004) (trial court erred in finding a due process violation based upon a *nonexistent right* because "there can be no valid due process claim as a matter of law because there can be no deprivation of a *nonexistent right*") (emphasis added); cf. Arjay Assocs., Inc. v. Bush, 891 F.2d 894, 898 (Fed. Cir. 1989) (holding plaintiffs lacked standing because "the injury they assert is to a *nonexistent right* to continued importation of a Congressionally excluded product") (emphasis added).

7